**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**TOTAL QUALITY LOGISTICS, LLC,**

**Plaintiff,**

**v.**

**BRYAN CABALLERO, et al.,**

**Defendants.**

**Case No. 1:26-cv-534**

**JUDGE DOUGLAS R. COLE**

**OPINION AND ORDER**

Defendant Ravago Americas LLC[1] removed this case from the Clermont County Court of Common Pleas on May 29, 2026. (Not. of Removal, Doc. 1). That removal brought along two pending motions: one seeking a preliminary injunction, (Doc. 4), and another requesting expedited discovery, (Doc. 5). Plaintiff Total Quality Logistics, LLC (TQL) now moves to remand the case to state court, (Doc. 9), based on a stipulation purporting to limit the value of the relief it seeks to "less than $75,000.00, inclusive of compensatory damages, punitive damages, attorney's fees, costs, expenses, interest, and the fair value of any injunctive relief," (Doc. 8, #148). Ravago, for its part, moves to dismiss, arguing (1) the Court lacks personal jurisdiction over it, and (2) TQL fails to state a claim. (Doc. 10). To top it all off, Ravago recently moved to file a surreply on TQL's remand motion based in large part on this Court's recent decision in *Total Quality Logistics, LLC v. Traffic Tech, Inc.*,

[1] The other Defendant, Bryan Caballero, has not yet been served and has not yet filed an appearance. (Resp., Doc. 13, #219 n.1).

No. 1:26-cv-455, 2026 WL 1944996 (S.D. Ohio July 6, 2026), which, Ravago says, "directly bear[s] on the issues in this case." (Doc. 16, #284).

Taking the last one first, the Court **GRANTS** Ravago leave to file the surreply, but ultimately **GRANTS** the motion to remand as well, and so **DENIES** all other outstanding motions as **MOOT**.

## BACKGROUND

TQL once again sues a former employee (Caballero), and his new employer (Ravago) for allegedly breaching a noncompetition agreement. (Compl., Doc. 3, #99); *see Traffic Tech*, 2026 WL 1944996, at *1 (collecting cases). And as it has also done many times before, TQL moves to remand to the state court from which Ravago removed the matter. (Docs. 1, 9). It bases that request on a stipulation purporting to cap the value of the relief sought in this case at an amount below the threshold for diversity jurisdiction. (Doc. 8).

As is typically the case, the facts are straightforward. Caballero allegedly worked at TQL from March 20, 2023, to February 21, 2025. (Doc. 3, #101). During his two years at TQL, Caballero held "progressively important positions," including "Logistics Account Executive Trainee," "Logistics Account Executive," "LTL Account Representative Trainee," and "LTL Account Representative." (*Id.*). Because Caballero had no prior experience in the logistics industry, TQL provided Caballero with "26 weeks of extensive paid training as well as ongoing paid training on TQL's logistics and sales strategies." (*Id.* at #102). As a result, Caballero "develop[ed] close relationships with and an intimate knowledge of certain TQL customers, and had

access to TQL's trade secrets and confidential information." (*Id.*). To protect its confidential information, TQL required Caballero to sign a confidentiality agreement and restrictive covenant that bars Caballero from working for or associating with any "Competing Business" as defined by the agreement, soliciting any existing or prospective TQL customers, or interfering or diverting "any business TQL had with its customers or potential customers." (*Id.* at #102–03). Caballero also agreed to refrain from disclosing or using TQL's confidential information. (*Id.* at #103).

After leaving TQL on February 21, 2025, Caballero allegedly went to work for Ravago, a TQL competitor. (*Id.* at #107). There, Caballero is allegedly "soliciting TQL's customers, or otherwise diverting business from TQL in violation" of the agreement. (*Id.*). According to TQL, Caballero "will inevitably use his knowledge of TQL's customers, trade secrets[,] and other Confidential Information" while discharging his duties at Ravago. (*Id.*). Yet, despite repeatedly reaching out to Ravago with a view toward avoiding litigation, Ravago has not responded. (*Id.*). As a result, TQL asserts (1) a breach of contract claim against Caballero; (2) a claim under Ohio's Uniform Trade Secrets Act against both Defendants; and (3) a claim for tortious interference with a contract against Ravago. (*Id.* at #108–13).

TQL filed suit in the Clermont County Court of Common Pleas on April 29, 2026. (*Id.* at #99). And on May 29, 2026, Ravago timely removed the case to this Court on diversity grounds. (Doc. 1, #2). As noted, that removal brought along (1) a Motion for Preliminary Injunction (Doc. 4), and (2) a Motion for Expedited Discovery (Doc.

5). Not long thereafter, TQL filed a Motion to Remand to State Court (Doc. 9), and Ravago filed a Motion to Dismiss (Doc. 10).

TQL attaches a stipulation to its remand motion that purports to cap the value of all relief sought, including the value of any injunctive relief, at $75,000. (Doc. 8, #148; Doc. 9, #152). That stipulation, if effective, deprives the Court of subject-matter jurisdiction. Ravago responded, though, arguing that the objective value of TQL's sought-after injunctive relief necessarily exceeds $75,000. (Doc. 13, #219–30, 232). Alternatively, Ravago requests jurisdictional discovery. (*Id.* at #230–32). TQL then replied, (Doc. 15), attaching an affidavit from Marc Bostwick, a risk manager from TQL's legal department, (Doc. 15-1, #278). There, Bostwick testifies that the "total brokerage revenue attributable to those accounts associated with" Caballero totaled $30,298.87 for the years of 2024, 2025, and 2026.[2] (*Id.* at #279). Two days later, Ravago moved to file a surreply, relying largely on this Court's recent decision in *Traffic Tech*. (Doc. 16, #284 (citing 2026 WL 1944996)).

With the briefing on TQL's remand motion complete, the matter is ripe for review.

## LEGAL STANDARD

When a defendant removes an action from state court to federal court, the federal court has jurisdiction only if it would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). Here, Ravago claims that this matter falls within the

[2] Specifically, Bostwick testifies that Caballero-associated accounts earned $22,946.92 in revenue in 2024; $5,531.57 in 2025; and $1,820.38 in 2026. (Doc. 15-1, #279). It is not clear why the declaration includes the 2026 figure (which postdates Caballero's termination date).

Court's original jurisdiction under 28 U.S.C. § 1332(a), that is, the diversity jurisdiction. (Doc. 1, #2). For that to be true, two conditions must be met: (1) the parties must be completely diverse; and (2) the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a).

Timing also matters. District courts must "measure[] all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004). In the removal context, this means that courts analyze their jurisdiction "at the time of removal, as that is when the case first appears in federal court." *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 568 (7th Cir. 2022) (citation omitted).

The removing defendant must establish by a preponderance of the evidence that § 1332's amount-in-controversy requirement is satisfied. *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 470 (6th Cir. 2019) (citation omitted). To be clear, though, this does not require a defendant to prove, "to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement." *Id.* at 471 (emphasis omitted). Rather, a defendant need only show that it is "more likely than not" that the plaintiff's claims exceed the jurisdictional threshold. *Id.* at 470 (citation omitted).

## LAW AND ANALYSIS

### A. The Court Will Consider Ravago's Surreply Because TQL's Reply Includes a First-Time Request for Attorney's Fees and Because the Court's Recent *Traffic Tech* Decision Directly Bears on This Dispute.

Start with the matter of Ravago's proposed surreply. Although this Court's local rules generally do not permit parties to file surreply briefs, a party may request leave to do so upon a showing of good cause. S.D. Ohio Civ. R. 7.2(a)(2). As this Court has previously explained, generally, good cause "exists where the reply brief raises new grounds that were not included in the movant's initial motion." *Canter v. Alkermes Blue Care Elect Preferred Provider Plan*, 593 F. Supp. 3d 737, 744 (S.D. Ohio 2022) (cleaned up) (quotation omitted). Good cause also exists "where a party seeks to 'clarify misstatements' contained in the reply brief." *Id.* at 744–45 (quotation omitted).

Here, TQL includes a new request for relief—attorney's fees—in its reply. (Doc. 15, #276). Ravago is, of course, entitled to dispute that request. Additionally, Ravago is correct that the Court's recent *Traffic Tech* decision has a direct bearing on the parties' dispute here, (Doc. 16, #284), and the Court is inclined to entertain Ravago's arguments based on the decision. So the Court **GRANTS** Ravago's Motion for Leave to File Surreply (Doc. 16).

### B. Remand is Appropriate Because TQL Has Filed a Post-Removal Stipulation that Divests the Court of Subject-Matter Jurisdiction.

The Court recently summarized the legal backdrop for the parties' dispute in *Traffic Tech*, and it repeats that summary here:

> As the Court has previously explained, a plaintiff is generally "the master of his or her own complaint." So, a plaintiff who wants to keep a

case in state court can typically sue for less than the jurisdictional amount, thereby precluding removal "even if the parties are diverse."

But some states, including Ohio, make things difficult for a plaintiff who elects to pursue that course. Under the Ohio civil rules, a plaintiff seeking "more than twenty-five thousand dollars … shall so state in the pleading but shall not specify in the demand for judgment the amount of recovery sought." And even if a plaintiff ignores that rule and includes a cap on the alleged damages in the complaint, "such limitations are not enforceable under Ohio law."

Because any cap the complaint contains is unenforceable as a matter of state law, an Ohio state-court defendant can remove an action, "even if the complaint purports to limit relief to less than $75,000, so long as the defendant can assert in good faith in its removal papers that the amount in controversy in fact exceeds the jurisdictional threshold."

If the defendant does so, then a plaintiff seeking remand to state court has two options. "First, the plaintiff can respond to the removal by stipulating in the federal court action that the amount in controversy is less than the jurisdictional amount. So long as the stipulation is clear that the plaintiff is not seeking, and will not accept, more than $75,000, that stipulation is binding, and thus deprives the federal court of subject matter jurisdiction." "Second, the plaintiff can move for remand, disputing the allegation in the removal papers regarding the jurisdictional amount."

…

But there is an important proviso on a party's ability to use a stipulation of the type referenced above. The stipulation must serve only to clarify damages; it cannot reduce them. In other words, because Ohio law makes it impossible for a plaintiff to use the complaint to limit the plaintiff's state court request in an enforceable manner to an amount less than $75,000, federal courts give the plaintiff one crack, post-removal, to make clear that the plaintiff had been pursuing less than $75,000 in recovery all along. That is, the plaintiff can clarify in federal court what they had been seeking in state court.

But if the plaintiff is instead *reducing* the amount they were seeking, then things change. Recall that post-removal changes to either the amount in controversy or citizenship do not affect jurisdiction—it is the state of those things at the time of removal that matters. And here, Defendants argue that "the stipulation is properly understood to be a reduction, rather than [a] clarification, of the amount in controversy"

> because "TQL seeks full enforcement of the non-compete," which, Defendants say, the Court should value at $400,000. According to Defendants, "for the injunctive relief to be worth less than $75,000, the injunction would necessarily need to be less than the full enforcement of Swain's Agreement—which is what TQL initial[ly] sought." By Defendants' count, "a fair market value of only $75,000 would only last approximately 2.25 months." And that's not what TQL sought in its complaint. So, the argument goes, "TQL's stipulation (as applied to the injunctive relief requests) is a post-hoc *reduction* to avoid federal jurisdiction."

2026 WL 1944996, at *3–4 (citations omitted). The parties' dispute here is much the same. In Ravago's view, the value of TQL's sought-after injunctive relief necessarily exceeds $75,000, such that any attempt to disclaim that value in a post-removal stipulation is an impermissible effort to reduce, rather than clarify, the amount in controversy. (Doc. 13, #214).

On the record here, though, the Court disagrees. In *Traffic Tech*, one of the defendants had submitted evidence that rather clearly established that the value of the requested injunctive relief alone surpassed the jurisdictional threshold—namely an affidavit stating that the plaintiff had generated some $400,000 or $500,000 in gross profit for TQL in the period immediately preceding his departure from the company. 2026 WL 1944996, at *5. Looking to "the profits[3] earned by the employer on business generated by the employee during the period immediately preceding his

[3] Admittedly, there may be some daylight between TQL's net "profit" and its "gross profit." But given the amount of TQL's gross profit in *Traffic Tech*, as well as the fact that neither party pressed the distinction, the Court declined to raise the distinction sua sponte in that case. Here, the Bostwick affidavit uses the terms "revenue" and "gross profit" synonymously. (*See* Doc. 15-1, #279 ¶ 6). To the extent that this figure includes costs and expenses that would be subtracted out before arriving at TQL's true net profit, the revenue/gross profit figure arguably overstates the amount in controversy. But again, as neither party has pointed this distinction out, the Court declines to pursue the matter further.

termination" as a proxy for "the economic value of the rights [the plaintiff sought] to protect," the Court concluded that the defendants had shown by a preponderance of the evidence that the value of the injunctive relief alone exceeded $75,000, even though the Court was dubious about the specific number that the defendants placed on the value of the relief there. *Id.* at *4–5 (first quoting 14B Wright & Miller's Federal Practice & Procedure § 3710.1 (5th ed. 2026); and then quoting *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007)).

But Ravago has not come forth with similar evidence here. And to the extent the record contains evidence about gross profit, it affirmatively cuts against Ravago's position. After all, the only evidence on point suggests that Caballero generated no more than $30,298.87 during the period preceding his termination.[4] (*See* Doc. 15-1, #279). If anything, then, this case is closer to the example that the Court identified as a permissible case for remand in *Traffic Tech*. *See* 2026 WL 1944996, at *6–7 (noting that a plaintiff could cap sought-after relief in a post-removal stipulation where, as an objective matter, "the injunctive relief has a value of $25,000"). So, despite the reasoning and result in *Traffic Tech*, remand is appropriate here.

Attempting to avoid that result, Ravago argues that the Bostwick declaration fails to include "the trade secrets TQL seeks to protect," and that the Court should look to TQL's complaint to determine the value of that relief. (Doc. 16-1, #292; *see, e.g.*, Doc. 3, #106 (alleging that TQL's confidential information bears "significant

---

[4] And this figure is itself arguably overstated to the extent that it includes revenue from Caballero-associated accounts after his termination. *See* infra note 3; (Doc. 15, #267).

economic value")). But those allegations do not suggest that the value of the trade secrets is enough to push the amount in controversy past the jurisdictional threshold.

Ravago also argues that the Court should not consider the Bostwick declaration because (1) it "is an impermissible, second attempt to redefine the value TQL places on the requested relief for jurisdictional purposes," and (2) it is barred under Local Civil Rule 7.2(d), which "limits evidence submitted with a reply memorandum to material 'needed to rebut the positions argued in memoranda in opposition.'" (Doc. 16-1, #292–93 (quoting S.D. Ohio. Civ. R. 7.2(d)). But neither argument works. Contrary to Ravago's assertion, TQL is not making a second attempt to redefine its requested relief; nor is TQL offering "new merits evidence." (*Id.* at #293). Rather, TQL is offering precisely the sort of evidence to which the Court looked in *Traffic Tech*, and it does so for the purpose of rebutting Ravago's argument that the value of the injunctive relief sought in this case necessarily exceeds $75,000. So the declaration violates neither the bar on second post-removal stipulations nor Rule 7.2(d).

Ravago also suggests that the Court should look to Defendants' perspectives, rather than TQL's, for purposes of valuing the injunctive relief. (*See* Doc. 13, #232). Should the Court opt for that path, Ravago contends that the Court should base its ruling on an affidavit from Gerren Bray, a Ravago human resources officer, that provides information about Caballero's compensation at Ravago. (Doc. 13-1). But the Sixth Circuit "has never held that the costs imposed on a defendant can satisfy the amount in controversy requirement." *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372,

381 (6th Cir. 2023) (citation omitted). And as TQL rightly observes, courts in the Southern District of Ohio "have routinely held that, in valuing injunctive relief for jurisdictional purposes, the Court's focus is on the economic value of the rights which the plaintiff seeks to protect through injunctive relief rather than upon the economic cost to the defendant if an injunction were granted." (Doc. 15, #269 (cleaned up) (collecting cases)). As in *Traffic Tech*, the Court declines to depart from that consensus.

Finally, the Court will not permit jurisdictional discovery. While Ravago is correct that district courts "may" allow jurisdictional discovery as to the amount in controversy, (Doc. 13, #226 (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014))), "district courts … have broad discretion over discovery," including "jurisdictional discovery," *Gardner v. Wal-Mart Stores East, LP*, No. 2:25-cv-13162, 2025 WL 3218284, at *2 (E.D. Mich. Nov. 18, 2025). To guide the exercise of that discretion, "courts may—and typically do—consider the likely usefulness of the requested discovery, the moving party's diligence, or the opposing party's cooperativeness." *Id.* (quoting *Cooper v. Glen Oaks Healthcare LLC*, No. 22-5570, 2023 WL 165961, at *1 (6th Cir. Jan. 12, 2023)).

First, the Court is not persuaded that additional discovery would be particularly useful in light of Bostwick's affidavit. True, as Ravago points out, that affidavit doesn't cover the value of the trade secrets that TQL seeks to protect, and only TQL would possess that information. (Doc. 16-1, #293–94). At the same time, though, the question here is not "the abstract value of TQL's trade secrets generally,"

but rather the trade secrets to which Caballero had access by dint of his "own limited book of business." (Doc. 15, #275). And even then, the question is not the monetary value of that subset of trade secrets, but rather the monetary value of an injunction preventing him from using those trade secrets for some period of time. Either way, as that book of business appears to have been rather thin, *see* infra note 2, it stands to reason that the value attributable to protecting those trade secrets through injunctive relief would not be high.[5]

Second, while the Court does not place great weight on Ravago's diligence (or lack thereof), Ravago could have made at least some efforts to procure this information in state court before removing. *See Gardner*, 2025 WL 3218284, at *2 ("Wal-Mart also showed a lack of diligence in obtaining jurisdictional discovery because it did not seek pre-removal discovery in state court.").

Third, although the Bostwick affidavit does not cover the value of TQL's trade secrets, that does not suggest that TQL has been uncooperative. If anything, the affidavit suggests the opposite. After all, TQL can hardly be faulted for submitting evidence of the sort the Court recently accepted in *Traffic Tech*. *See* 2026 WL 1944996, at *5. Beyond that, the Court is hesitant to permit a potentially burdensome round of pre-merits discovery against a backdrop in which TQL seeks time-sensitive injunctive relief. (*See* Docs. 4, 5).

---

[5] Of course, to the extent that TQL is seeking money as damages for the misappropriation of those trade secrets, that would be subject to its stipulation that it will not accept more than $75,000 in total, i.e., the sum of the money damages, plus the value of the injunctive relief, plus any other award (such as attorneys' fees) will be less than $75,000.

At bottom, while Ravago's legal premise—i.e., that a plaintiff cannot disclaim the value of the injunctive relief it seeks in a post-removal stipulation to defeat federal jurisdiction—is sound, this case is factually distinguishable from *Traffic Tech*. As a result, the Court **GRANTS** TQL's Motion to Remand to State Court (Doc. 9).

**C. The Court Denies TQL's Request for Attorney's Fees.**

One final piece of housekeeping: TQL's late-breaking request for attorney's fees. (*See* Doc. 15, #276). Ravago presses several arguments in opposition to this request, including that "the Court should decline to consider TQL's fee request at all" because it is raised for the first time in a reply brief. (Doc. 16-1, #294). The Court will consider the request on the merits, but nonetheless denies TQL's request.

"[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). "A defendant lacks an objectively reasonable basis for removal when well-settled case law makes it clear that federal courts lack jurisdiction to hear the case." *A Forever Recovery, Inc. v. Twp. of Pennfield*, 606 F. App'x 279, 281 (6th Cir. 2015) (citations omitted). That said, a party seeking fees and costs need not show "that the unsuccessful party's position" was so weak as to be "frivolous, unreasonable, or without foundation." *Martin*, 546 U.S. at 138 (citations omitted).

Ravago's removal of this case to federal court does not satisfy that standard. As Ravago points out, this Court recently sustained a position not so different from the one Ravago presses here. (Doc. 16-1, #295 (referencing *Traffic Tech*, 2026 WL

1944996)). And while the argument did not work in this case, that is not enough to show that Ravago "lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141. So the Court **DENIES** TQL's request for attorney's fees.

## CONCLUSION

For the above reasons, the Court **GRANTS** Ravago's Motion for Leave to File Surreply (Doc. 16), **GRANTS** TQL's Motion to Remand to State Court (Doc. 9), and **DENIES** all other outstanding motions (Docs. 4, 5, 10), as **MOOT**. Consistent with that, the Court **REMANDS** this case to the Clermont County Court of Common Pleas and **DIRECTS** the Clerk to terminate this matter on the Court's docket.

**SO ORDERED.**

July 31, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**